UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DELORES MAE BELL,

    Plaintiff,

v.                                                             Case No. 3:17-cv-430-J-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Delores Mae Bell, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, Disability Insurance Benefits and Supplemental Security Income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the Court finds that the decision of the Commissioner is due to be **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

**I. Social Security Act Eligibility, Procedural History, Standard of Review, and ALJ's Findings**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must

be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

A.      **Procedural History**

On March 6, 2012, Plaintiff filed an application for a period of disability and DIB, and an application for SSI. (Tr. 26, 500-506, 507-12). In both applications Plaintiff alleged a disability onset date of August 6, 2011. (Tr. 29). Plaintiff's applications were denied initially on March 13, 2012 and upon reconsideration on August 27, 2012. (Tr. 264-68, 270-75, 278-82, 283-87). Plaintiff requested a hearing and on January 9, 2014, an administrative hearing was held before Administrative Law Judge John D. Thompson, Jr. (the "ALJ"). (Tr. 155-201). On February 3, 2014, the ALJ rendered his decision finding Plaintiff not disabled. (Tr. 240-58). Plaintiff requested review of the ALJ's decision and on April 29, 2015, the Appeals Council granted Plaintiff's request, vacated the ALJ's decision, and remanded the matter back to the ALJ for further review. (Tr. 259-62).

Two additional administrative hearings were held, the first on November 11, 2015, and the second on February 4, 2016. (Tr. 48-110, 111-54). On March 7, 2016, the ALJ entered a second decision finding that Plaintiff was not disabled. (Tr. 23-47). Plaintiff requested review of the decision, but the Appeals Council denied review on February 17, 2017. (Tr. 1-3). Plaintiff initiated this action by Complaint (Doc. 1) on April 11, 2017.

B.      **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is

supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Sbpt. P. App. 1. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to Claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

## C. The ALJ's Findings

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2011, the alleged onset date. (Tr. 29). At step two, the ALJ found that Plaintiff had the following severe impairments: a history of neck and low back injury; degenerative disc disease; status post (s/p) L4-L5 discectomy and left sided SI joint fusion. (Tr. 29). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. The claimant is limited to only occasional use of her upper and lower extremities for the push/pull operation of arm/hand and foot/pedal controls; she can climb ramps and stairs occasionally, but perform no climbing of ropes, ladders or scaffolds; she is limited to no more than the occasional performance of postural movements except crawling which is precluded (i.e., balance, bend, squat, crouch or kneel). She can reach in all directions frequently with the exception of overhead reaching, which is precluded. The claimant can use her hands for the frequent handling, fine finger dexterity and feeling of objects within the assigned weight limits associated with such light work. She has no limitations on her ability to see, speak and hear; she must avoid exposure to work hazards such as work around dangerous machinery, avoid concentrated vibrations and work on unprotected heights. She requires a clear air environment without exposure to concentrated atmospheric pollutants such as dust, smoke, fumes, and chemicals.

(Tr. 29). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a hair stylist and cashier checker, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 36).

Despite finding that Plaintiff could perform past relevant work, the ALJ continued the sequential evaluation and made an alternative finding at step five that there were jobs that existed

in the national economy in significant numbers that Plaintiff could have performed. (Tr. 36-37). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as ticket seller, night cleaner, and dining room attendant. (Tr. 37). The ALJ concluded that Plaintiff was not under a disability at any time from August 6, 2011, the alleged onset date, through March 10, 2016, the date of the ALJ's decision. (Tr. 38).

## II.     Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to develop the record with respect to Plaintiff's hand and spinal impairments; and (2) whether the ALJ erred by failing to properly analyze the opinions of David Petersen, M.D. and Philip Carnevale, M.D. The Court will address each issue in turn.

### a)  Whether the ALJ erred by failing to develop the record with respect to Plaintiff's hand and spinal impairments.

Plaintiff argues that the ALJ erred in his duty to fairly and fully develop the record. (Doc. 17 p. 4). Plaintiff notes that the ALJ remarked multiple times during the three administrative hearings that there was a lack of medical evidence in the record. (Doc. 17 p. 4). For example, at the close of the second hearing, the ALJ told Plaintiff's counsel that he would "do him a solid" and give him "one final opportunity" to get records needed. (Doc. 17 p. 5). Plaintiff notes that, at the final hearing, Plaintiff informed the ALJ that she had dismissed her counsel and had decided to proceed without benefit of counsel. (Doc. 17 p. 5). Plaintiff did not bring any additional evidence besides a letter from Dr. Carnevale containing his opinion that Plaintiff in unable to take on any type of employment or physical activity. (Doc. 17 p. 5).

In response, Defendant argues that the ALJ did not fail to develop the record but rather that Plaintiff failed to produce evidence in support of her claim. (Doc. 19 p. 5). Further, Defendant argues that Plaintiff has failed to demonstrate that she has been prejudiced by the ALJ's development of the record. (Doc. 19 p. 6-7).

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). When a claimant is not represented at the hearing before the ALJ, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited. . . . However, there must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997) (internal citations omitted).

To demonstrate prejudice, the claimant must show "that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

In this case, the Court finds that the ALJ did not err by failing to fully develop the record. Plaintiff has had ample opportunity to provide evidence in support of her claim, this case having been initiated in 2012 and there having been three administrative hearings, the first two at which Plaintiff was represented by counsel. Despite arguing that the record is incomplete, Plaintiff has

failed to identify the medical evidence missing from the medical record, nor does Plaintiff contend that the ALJ should have ordered any specific consultative examinations. On the instant appeal, Plaintiff has still failed to present any relevant evidence that is missing from the record. For these reasons, the Court rejects Plaintiff's generalized argument that the ALJ erred by failing to fully develop the record.

      **b) Whether the ALJ erred by failing to properly analyze the opinions of David Petersen, M.D. and Peter Carnevale, M.D.**

Plaintiff contends that the ALJ erred by failing to provide good cause for assigning no weight to the respective opinions of Dr. Petersen and Dr. Carnevale. (Doc. 17 p. 10). Plaintiff contends that the reasons the ALJ gave for rejecting their opinions were legally deficient and factually incorrect. (Doc. 17 p. 10). Plaintiff contends that the ALJ failed to acknowledge or discuss Dr. Petersen's opinion concerning Plaintiff's physical capabilities and incorrectly stated that Dr. Carnevale had never personally examined Plaintiff. (Doc. 17 p. 23-24). In response, Defendant argues that the ALJ provided good reasons, supported by substantial evidence, for giving little weigh to the opinions of Dr. Petersen and Dr. Carnevale. (Doc. 19 p. 10).

      **1) Dr. Petersen**

The record shows that on November 30, 2012, Dr. Petersen completed a mental assessment of Plaintiff's mental work related limitations. (Tr. 757). Dr. Petersen indicated that Plaintiff had symptoms of: short-term, intermediate, or long-term memory impairment; sleep disturbance; personality change; persistent disturbances of mood or affect; decreased energy; and motor tension, secondary to pain and her inability to tolerate activities of daily living. (Tr. 757-58). Dr. Petersen indicated that Plaintiff had side effects related to her medications, including dizziness, drowsiness, fatigue, and lethargy because of her medications. (Tr. 758). Dr. Petersen found that secondary to pain and her medications Plaintiff is markedly impaired in her ability to work in

coordination with or proximity to others without being distracted and in her ability to make simple, work-related decisions. (Tr. 758). Dr. Petersen found that Plaintiff had moderate limitation of her ability to perform activities within a schedule, be punctual, and maintain regular attendance; and interact appropriately with the general public. (Tr. 758). Dr. Petersen found that she is slightly to moderately impaired in her ability to maintain attention and concentration for extended periods. (Tr. 758). Dr. Petersen opined that Plaintiff's impairments or treatment would cause her to be absent from work more than 3 times a month, and concluded that in his opinion she is not capable of performing a full-time job, 8-hours a day, 5 days a week, on a regular and continuing basis. (Tr. 758).

Dr. Petersen also submitted a medical opinion regarding Plaintiff's ability to do physical work-related activities on November 30, 2012. (Tr. 760). Dr. Petersen described that Plaintiff's clinically verified symptoms were low back and knee pain, which had been treated by surgery of the lumbar spine, and medical findings included noticeable pain, decreased range of motion, and weakness. (Tr. 760). Dr. Petersen found that Plaintiff can walk, stand, and sit less than 2 hours each in an 8-hour workday; must be allowed to shift at-will from sitting or standing/walking, and needs to lie down at unpredictable times during the workday; can lift less than 10 pounds; and cannot bend or twist. (Tr. 760). Dr. Petersen repeated on this assessment's opinion that Plaintiff would be absent from work more than 3 times a month due to exacerbation of her medical conditions. (Tr. 760).

In his decision, the ALJ analyzed the opinion evidence from Dr. Petersen as follows:

> Accordingly, treating physician, Dr. Peterson, completed a Mental Impairment Questionnaire on the claimant in November 2012 and opined the following regarding the claimant's medical conditions and connected limitations: the claimant cannot tolerate activities of daily living; she had decreased ROM, pain and muscle weakness; the claimant has moderate to marked limitations in some mental tasks in basic work activities such as

> working in close proximity to others and making simple work related decisions and that, due ot the claimant's impairments, she would be expected to be absent from work more than 3 times per month (Exhibit 6F).
>
> Here, the undersigned finds Dr. Peterson's questionnaire responses unsupported by the objective medical evidence, including his own treatment record and post-surgical progress notes. Furthermore, Dr. Peterson is unqualified to make this kind of mental health assessment, as he is a surgeon-not a mental health professional and he has never treated the claimant in that capacity. Therefore, the undersigned accords Dr. Peterson's medical opinion no weight (Exhibit 6F).

(Tr. 33-34).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or

examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, the Court finds that substantial evidence supports the ALJ's decision to accord no weight to Dr. Petersen's mental health assessment. The ALJ properly noted that Dr. Petersen did not treat Plaintiff for any mental health symptoms and that Dr. Petersen's treatment notes do not support his conclusion. (Tr. 34). The record shows that Dr. Petersen's treatment records never addressed Plaintiff's mental health and do not document any mental health limitations or treatment. (Tr. 734-367, 749-56, 778). Thus, the ALJ did not err in weighing Dr. Petersen's mental assessment.

The Court finds, however, that the ALJ did err by failing to properly consider Dr. Petersen's opinion regarding Plaintiff's ability to do physical work-related activities. As Plaintiff's treating physician, Dr. Petersen's opinion concerning Plaintiff's ability to do physical work-related activities is highly relevant to the determination of whether she is disabled. The law requires not only that the ALJ address such an opinion, but that he specifically weigh the opinion and provide an explanation of his determination. *Winschel,* 631 F3d at 1178-79. Here, the ALJ's failure to weigh or even mention Dr. Petersen's opinion constitutes reversible error.

**2) Dr. Carnevale**

The record shows that on January 4, 2014, Dr. Carnevale submitted a medical opinion regarding Plaintiff's ability to do work-related activities, noting she had been treated by him since October 2012. (Tr. 784). Dr. Carnevale opined that Plaintiff was not capable of performing a full-time job, that is 8 hours per day 5 days per week, on a regular and continuous basis. (Tr. 784). Plaintiff's diagnoses were chronic pain, secondary to lumbar disc herniation and spinal stenosis; lumbar radiculopathy; and opioid dependence. (Tr. 784). Dr. Carnevale found that Plaintiff's

clinically verified symptoms were pain and difficulty walking, standing, and sitting; her only partially successful treatments included medication (opioids), physical therapy, and exercise. (Tr. 784). Medical findings in support of Dr. Carnevale's limitations were weakness, noticeable pain, and impaired gait. (Tr. 784). Dr. Carnevale's opined that Plaintiff could walk, stand, and sit less than 2 hours each in an 8 hour work day; she required the ability to shift at will from sitting to standing/walking, and to lie down at unpredictable times during an 8-hour workday, and that she could lift less than 10 pounds. (Tr. 784). Dr. Carnevale opined that due to Plaintiff's impairments, she would likely be absent more than 3 days per month. (Tr. 784).

On August 12, 2015, Dr. Carnevale provided a supplemental statement on Plaintiff's behalf, indicating she suffers from chronic pain syndrome, secondary to disc herniation in her lumbar spine with impression on the spinal cord sac; further, she has spinal arthritis causing facet joint hypertrophy and nerve root compression, resulting in sciatica and difficulty with ambulation. (Tr. 814). The statement provided that Plaintiff also experienced significant spinal cord stenosis and a total of 2-disc herniation, anterior and posteriorly at the L4-5 level; upon examination, there is significant lumbar radiculopathy (Tr. 814). Dr. Carnevale opined that surgery is not an option, nor is it likely in the future, Plaintiff has a poor prognosis and remains opioid dependent for a better quality of life; however, her medications have side effects of lapses in memory, decreased judgment constipation, somnolence, weakness, and insomnia. (Tr. 814).

Dr. Carnevale submitted his final assessment on February 3, 2016, detailing again the same problems with respect to Plaintiff's chronic pain syndrome and her lumbar spine. (Tr. 890). Dr. Carnevale discussed Plaintiff's cervical spine being compromised with disc space narrowing and marked desiccation, foramina stenosis, two disc herniations, and global spinal arthritis, resulting in numbness in her hands and dexterity issues. (Tr. 890). Dr. Carnevale noted that headaches were

common and her muscle spasms had increased in her upper back and shoulders. (Tr. 890). Dr. Carnevale indicated that surgery was not an option so Plaintiff had to combat her pain with opioids, upon which she was dependent to maintain a better quality of life, but included still the aforementioned side effects. (Tr. 890). Dr. Carnevale renewed his recommendation that Plaintiff not take on any type of employment or physical activity. (Tr. 890).

In his decision, the ALJ addressed Dr. Carnevale's opinions as follows

> Further, Philip Carnevale, M.D., from Parthenon Medical Center, also completed a medical questionnaire on the claimant in January 2014. Within this form, Dr. Carnevale indicated the claimant's primary diagnoses are lumbar disc herniation, spinal stenosis, lumbar radiculopathy and chronic pain; the claimant has difficulties walking, standing and sitting; in a normal 8-hour workday, the claimant can sit/stand walk less than two hours; she can lift less than 10 pounds; she requires freedom to shift at will between sitting or standing with opportunity to lie down at unpredictable times and, due to the claimant's impairments, she is expected to be asset from work more than 3 times per month (Exhibit 13F). Dr. Carnevale also offered similar statements in letters from August 2015 and February 2016 (exhibits 24F, 28F) again opinion that the claimant was unable to work due to significant pain and various lower back problems. He specifically notes that MRI studies show significant spinal cord compression and lumbar radiculopathy but such conclusions are not consistent with the radiological interpretations of these MRI studies and are also inconsistent with the lack of objective medical findings demonstrating significant neurological deficits or abnormalities such as reduced sensation, muscle strength or reflex loss in her lower extremities. Additionally, no appreciable weight is accorded these more recent assessment for largely the same reasons that applied to his earlier opinion. Despite the fact that his August 2015 and February 2016 letters suggest that his conclusions were based, in part, on physical exams performed by this physician, a careful review of the more recent progress notes (Exhibit 26F) fails to demonstrate that he ever performed any kind of meaningful physical exam beyond taking this claimant's vital signs. He noted that her pain was under good control with the prescribed medications with no adverse side effects. His neurological assessments, when same were noted, were intact. His progress notes are largely repetitive with little variation from one note to the next. Dr. Carnevale is largely seen for medication refills and urine drug screening for the narcotics that he is prescribing.

> Given the above opinion evidence received from Dr. Carnevale, the undersigned notes the evidence reflects that this medical source never physically examined the claimant and such medical source statements were based on a one-time office visit in which the claimant was seen by a medical assistant, Jasmine Brown, in December 2013. Dr. Carnevale only reviewed and electronically signed Ms. Brown's assessment (Exhibit 12F). Thus, because Dr. Carnevale offered an opinion about someone that he never actually saw, the undersigned accords no weight to such a medical opinion (Exhibits 12F and 13F). The undersigned would further note that medical assistants are not qualified to perform physical assessments under Florida law. Such work is beyond the scope of their licensure in this state.

(Tr. 34).

In this case, the Court finds no error in the ALJ's decision to accord no weight to Dr. Carnevale's December 2013 assessment. The record reflects that the ALJ properly noted that the treatment notes dated December 2013 indicate that Plaintiff was seen by medical assistant Jamine Brown. (Tr. 778). There is no indication that Dr. Carnevale had examined Plaintiff prior to offering his December 2013 opinion. Accordingly, the Court finds no error in the ALJ's decision to discount this decision.

The Court, however, finds that Plaintiff failed to provide good cause for according no weight to Dr. Carnevale's subsequent opinions. The ALJ specified that he was according no weight to these opinions "for largely the same reasons that applied to his earlier opinion." If the ALJ means that the opinions are not entitled to any weight because Dr. Carnevale had not examined Plaintiff, then this explanation does not provide good cause. The record shows that Dr. Carnevale personally examined Plaintiff multiple times between October 2014 and November 2015. (Tr. 828-848). Furthermore, it is unclear how the ALJ determined that Dr. Carnevale had not conducted any "meaningful physical exam." On remand, the Court will require the ALJ to re-evaluate Dr. Carnevale's opinions and fully explain his reasoning if he determines the opinions are entitled to no weight.

### III.     Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties